**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **RONALD M. AYERS,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **THE UNIVERSITY OF TEXAS AT** | § | |
| **SAN ANTONIO,** | § | |
| **RICARDO ROMO,** | § | |
| **ROSALIE AMBROSINO** | § | |
| **LYNDA DE LA VIÑA,** | § | |
| **COLLEEN MCHUGH,** | § | |
| **JAMES D. DANNEBAUM, P.E.,** | § | |
| **PAUL L. FOSTER,** | § | **CIV. ACTION NO.:** |
| **PRINTICE L. GARY,** | § | **SA-10-CA0612-FB-JWP** |
| **H. SCOTT CAVEN, JR.,** | § | |
| **JOHN W. BARNHILL, JR.,** | § | |
| **JAMES R. HUFFINES,** | § | |
| **JANIECE LONGORIA,** | § | |
| **ROBERT ROWLING,** | § | |
| | § | |
| **Individually and** | § | |
| **in their Official Capacities,** | § | |
| | § | |
| *Defendants.* | § | |

---

**PLAINTIFF'S SECOND AMENDED COMPLAINT.**

---

**TO THE HONORABLE MAGISTRATE JUDGE PRIMOMO:**

RONALD M. AYERS, files this his Second Amended Complaint against The University Of Texas At San Antonio ("UTSA"), Ricardo Romo ("President"), Rosalie Ambrosino ("Provost"), Lynda De La Viña ("Dean"), Colleen McHugh, James D. Dannebaum, P.E., Paul L. Foster, Printice L. Gary, H. Scott Caven, Jr., John W. Barnhill, Jr., James R. Huffines, Janiece Longoria, and Robert Rowling, and shows the following:

## PRELIMINARY STATEMENT

1.      "Witch Hunt" comes to mind: so does "Inquisition."  These images come to mind because they involved the persecution of individuals who engaged in unpopular behavior or beliefs and were labeled criminals without a trial and without evidence even though they had not committed crimes.  This case also involves a great travesty. One involving an unpopular topic: "Pornography."  It involves the accusation of a serious crime: "Child Pornography."

2.      Plaintiff is a tenured Associate Professor of Economics with 29 years of service at UTSA who was terminated in violation of the protections and rights conferred by the United States Constitution, Federal and State Laws.  In a nutshell, the reasons seized upon by the Dean and Provost to terminate Plaintiff were untruthfulness about viewing "Pornography."

3.      The prosecution started when a student complained that sexual noises were heard coming from Plaintiff's office.  In fact, the student complained informally to another professor who took it upon herself to formalize the complaint with the Dean and the UTSA Police Department.  It is important to note that for nearly 27 years, Plaintiff had never received a complaint, much less a complaint of this nature.   Immediately a child pornography investigation took place by the University Police. This private, unproven and untrue allegation was disseminated throughout the campus.   Indeed, numerous searches and seizures took place investigating Plaintiff for suspicion of "Child Pornography," even though there was NO complaint regarding child pornography.  There was no evidence that child pornography had ever been viewed or possessed by Plaintiff, nor was there a reason to suspect that he did it.  Despite this fact, rumors circulated about

Plaintiff in an effort to defame, slander and destroy his name and reputation.  The IT department and police department did discover that there was evidence that Plaintiff had visited some pornographic websites; however, no child pornography was involved. After the police returned reports that there was no child pornography involved, the Dean held a meeting to discuss these findings with the Plaintiff.  This meeting was akin to a "Star Chamber" wherein a decision had been predetermined and Plaintiff was not afforded an opportunity to defend himself.  When Plaintiff offered proffered reasons for viewing pornographic websites, including academic research, the Dean would not accept nor listen to Plaintiff. She had already predetermined her course of action prior to the meeting.  In this regard, the Dean on her own, without the intervention of an M.D., ordered Plaintiff to seek medical help because she determined he was mentally sick.  She stated that Plaintiff was "dangerous" and a "porn addict" and insinuated that he would and had molested underage minors.   The Dean stated that if Plaintiff refused treatment, he would be fired immediately. Upon the conclusion of the meeting, Plaintiff was greeted by an armed police officer and human resource person (who had been instructed prior to the meeting that Plaintiff would be placed on medical leave) who promptly placed Plaintiff on medical leave in compliance with the Dean's directive in compliance with the Family Medical Leave Act.  The facts of this meeting were intentionally, viciously and illegally spread throughout the community. Not only was such tortious misconduct slanderous per se, it violated Plaintiff's privacy, violated the Americans with Disabilities Act, violated HIPAA and it also was entirely unprecedented in the history of UTSA.

4.      Plaintiff complied and was treated by a Physician and underwent psychotherapy. When the physician cleared Plaintiff of any mental illness or psychological problems he

presented this information to the Human Resource Department as instructed and asked to return to work.  Plaintiff was not allowed to return to work and was subsequently fired in violation of Federal Law.  It is important to note that the reasons set forth in writing by the Provost recommending Plaintiff's termination included viewing pornography, excessive use of university resources for personal reasons, lying about viewing pornography, and other reasons which they later "dropped" as official reasons. In other words, their tactic was to throw enough reasons around about Plaintiff, even if untrue, in the hopes something would stick.

5.      Plaintiff appealed the recommendation for termination.  A Hearing Tribunal was held and the panel of tenured professors <u>unanimously</u> <u>determined</u> <u>that</u> <u>Plaintiff</u> <u>should</u> <u>not</u> <u>be</u> <u>fired</u>. At the two day hearing, the Tribunal heard uncontroverted evidence that was presented by the Provost and Dean that other professors did access pornography and utilized state resources for personal use more often and for longer periods of time than Plaintiff.  They also chose to ignore the fact that student organizations openly distribute pornography on campus. The witnesses testified that other professors' personal use of state resources far exceeded Plaintiff's and admitted that other professor's had accessed pornography when commonly investigated.  Indeed there is evidence of female professors utilizing porn for academic reasons (or otherwise). However no one else has been the subject of false reports, innuendo and rumors of child pornography.  The minutes, documents and testimony of the Tribunal, including information intended for executive session involving unfounded allegations of child pornography were released to third parties, news organizations and others allowing for its free dissemination throughout the Campus, City, County and United States at large.

6.      Unsatisfied with the outcome, the President and Provost appealed to the U.T. Board of Regents who chose to ignore the uncontroverted evidence that other professors have accessed pornography on campus. The BOR claimed to agree with the Hearing Tribunal's conclusions.  However, the BOR decided to reverse the Hearing Tribunal's decision so that the statement by the BOR that it is was in agreement with the Hearing Tribunal which is misleading, false and is a non-sequiter.  Based solely on the transcript of the Hearing Tribunal, the BOR recommended that Plaintiff be terminated because he viewed pornographic materials and lied when questioned about viewing pornography.

## JURISDICTION AND VENUE

7.      This action arises under 42 U.S.C. 1983 and 1988, and the First and Fifth Amendments, made applicable to Defendants through the Fourteenth Amendment of the United States Constitution.

8.      Venue is proper in the Western District of Texas where a substantial part of the events or omissions giving rise to Plaintiff's claim occurred. 28 U.S.C. Section 1391(b)(2).

## PARTIES

9.      Plaintiff, Dr. Ronald M. Ayers, is an individual that resides in San Antonio, Texas.

10.      Defendant, UTSA, is qualified to do business in Texas, and has been served with process and made an appearance herein.

11.      Defendant, Dr. Ricardo Romo was the President of UTSA, at the time the decision was rendered in this case.  He may be served c/o Gail A. Jensen, Office of Legal Affairs, One UTSA Circle, San Antonio, Texas, 78249.

12.     Defendant, Dr. Rosalie Ambrosino was the Provost of UTSA, at the time the decision was rendered in this case. She may be served c/o Gail A. Jensen, Office of Legal Affairs, One UTSA Circle, San Antonio, Texas, 78249.

13.     Defendant, Dr. Lynda De La Viña was the Dean of the School of Business at UTSA at the time the decision was rendered in this case.  She may be served c/o Gail A. Jensen, Office of Legal Affairs, One UTSA Circle, San Antonio, Texas, 78249.

14.      Defendant, Ms. Colleen McHugh served on the U.T. Board of Regents at the time the decision was rendered in this case.  She may be served c/o Helen Bright, Office of the Board of Regents, Ashbel Smith Hall, Suite 820, 201 W. 7th Street, Austin, Texas 78701.

15.      Defendant, Mr. James D. Dannebaum, P.E. served on the U.T. Board of Regents at the time the decision was rendered in this case.  He may be served c/o Helen Bright, Office of the Board of Regents, Ashbel Smith Hall, Suite 820, 201 W. 7th Street, Austin, Texas  78701.

16.      Defendant, Mr. Paul L. Foster served on the U.T. Board of Regents at the time the decision was rendered in this case.  He may be served c/o Helen Bright, Office of the Board of Regents, Ashbel Smith Hall, Suite 820, 201 W. 7th Street, Austin, Texas  78701.

17.      Defendant, Mr. Printice L. Gary served on the U.T. Board of Regents at the time the decision was rendered in this case.  He may be served c/o Helen Bright, Office of the Board of Regents, Ashbel Smith Hall, Suite 820, 201 W. 7th Street, Austin, Texas  78701.

18.      Defendant, Mr. H. Scott Caven, Jr. served on the U.T. Board of Regents at the time the decision was rendered in this case.  He may be served c/o Helen Bright, Office

of the Board of Regents, Ashbel Smith Hall, Suite 820, 201 W. 7th Street, Austin, Texas 78701.

19.     Defendant, Mr. John W. Barnhill, Jr. served on the U.T. Board of Regents at the time the decision was rendered in this case.  He may be served c/o Helen Bright, Office of the Board of Regents, Ashbel Smith Hall, Suite 820, 201 W. 7th Street, Austin, Texas 78701.

20.     Defendant, Mr. James R. Huffines served on the U.T. Board of Regents at the time the decision was rendered in this case.  He may be served c/o Helen Bright, Office of the Board of Regents, Ashbel Smith Hall, Suite 820, 201 W. 7th Street, Austin, Texas 78701.

21.     Defendant, Ms. Janiece Longoria served on the U.T. Board of Regents at the time the decision was rendered in this case.  She may be served c/o Helen Bright, Office of the Board of Regents, Ashbel Smith Hall, Suite 820, 201 W. 7th Street, Austin, Texas 78701.

22.     Defendant, Mr. Robert Rowling served on the U.T. Board of Regents at the time the decision was rendered in this case.  He may be served c/o Helen Bright, Office of the Board of Regents, Ashbel Smith Hall, Suite 820, 201 W. 7th Street, Austin, Texas  78701.

## FACTS

23.     This lawsuit is brought by Plaintiff to vindicate his wrongful discharge pursuant to the laws and statutes identified herein.

24.     Plaintiff is a tenured professor of Economics with 29 years of service at UTSA who was terminated in violation of the protections and rights conferred by the United

States Constitution, Federal and State Laws.  Plaintiff had previously received teaching awards.

25.    In a nutshell, the reasons seized upon by the Dean and Provost to terminate Plaintiff were untruthfulness about viewing "Pornography."

26.    The prosecution started when a student complained that sexual noises were heard coming from Plaintiff's office. In fact, the student complained informally to another professor who took it upon herself to formalize the complaint with the Dean.  It is important to note that for nearly 27 years, Plaintiff had never received a complaint, much less a complaint of this nature.  Immediately a child pornography investigation took place by the University Police. This private, unproven and untrue allegation was disseminated throughout the campus.  Indeed, numerous searches and seizures took place investigating Plaintiff for suspicion of "Child Pornography," even though there was <u>NO</u> complaint regarding child pornography.  There was no evidence that child pornography had ever been viewed or possessed by Plaintiff, nor was there a reason to suspect that it did.  Despite this fact, rumors circulated about Plaintiff in an effort to defame, slander and destroy his name and reputation.

27.    The IT department and police department did discover that there was evidence that Plaintiff had visited some pornographic websites; however, no child pornography was involved. After the police returned reports that there was no child pornography involved, the Dean held a meeting to discuss these finding with Plaintiff.

28.    Plaintiff was summoned to the Dean's office and was required to remain in the office which was being guarded by armed police officers.  The officer was posted outside of the Dean's Office and Plaintiff was made aware of the peace officer upon his entry

into the office.  This meeting was akin to a "Star Chamber" wherein a decision had been predetermined and Plaintiff was not afforded an opportunity to defend himself.  Plaintiff was instructed that he could not leave, nor was he afforded counsel. Further, Defendants failed to Mirandize him nor tell him he had 5th Amendment rights which he could invoke. The harassment and cajoling continued.  When Plaintiff offered proffered reasons for viewing pornographic websites, including academic research, the Dean would not accept nor listen to Plaintiff. She had already predetermined her course of action prior to the meeting.

29.      In this regard, the Dean on her own, without the intervention of an M.D., ordered Plaintiff to seek medical help because she determined he was mentally sick.  She stated that Plaintiff was "dangerous" and a "porn addict" and insinuated that he would and had molested underage minors.   The Dean stated that if Plaintiff refused treatment, he would be fired. Upon the conclusion of the meeting, Plaintiff was greeted by an armed police officer and human resource person (who had been instructed prior to the meeting that Plaintiff would be placed on medical leave) who promptly placed Plaintiff on medical leave in compliance with the Deans directive in compliance with the Family Medical Leave Act.

30.      The facts of this meeting were intentionally, viciously and illegally spread throughout the community. Not only was such tortious misconduct slanderous per se, it violated Plaintiff's privacy, violated the Americans with Disabilities Act, violated HIPAA and it also was entirely unprecedented in the history of UTSA.

31.      Plaintiff complied and was treated by a Physician and underwent psychotherapy. When the physician cleared Plaintiff of any mental illness or psychological problems he

presented this information to the Human Resource Department as instructed and asked to return to work.  Plaintiff was not allowed to return to work and was subsequently fired in violation of Federal Law.  It is important to note that the reasons set forth in writing by the Provost recommending Plaintiff's termination included viewing pornography, excessive use of University resources for personal reasons, lying about viewing pornography, and other reasons which they later "dropped" as official reasons. In other words, their tactic was to throw enough reasons around about Plaintiff, even if untrue, in the hopes something would stick.

32.     Plaintiff appealed the recommendation for termination and a two day hearing took place in which there was uncontroverted evidence from Defendants that:

> (i)     Other professors had accessed pornography from their computers.
>
> (ii)    Plaintiff's usage of his computer for personal reasons was <u>substantially</u> <u>less</u> than that other professors.
>
> (iii)   The IT Department Representative was asked for his opinion in whether Plaintiff's use violated UTSA's policy, and he stated yes, but could not explain why others were not terminated.
>
> (iv)    The IT Department Representative was not qualified to offer opinions on interpretations of UTSA policy.
>
> (v)     The IT Department Representative admitted that Plaintiff was not treated the same as other professors-Plaintiff was treated differently and scrutinized more harshly.

(vi)   Other   professors   regularly   accessed   pornography;
However, the IT Department had never before been asked
to testify regarding the termination of a professor.

(vii)   The IT Department of UTSA determined that Plaintiff had
accessed approximately four hours of video material that
was pornographic but not child pornography

33.   Also, Defendants failed to adhere to policies G1, G4 and G5 in the Policy and

Procedures pertinent to this matter. Specifically, The University of Texas has a 34 Page

manual entitled " Electronic Media Standards task Force" Dated August 30th 2004

provides in pertinent part :

> G. Clarify Sanctions Process for Computer Misuse*1. Provide for graduated
> penalties, with greater penalties for more serious or repeated infractions.2. Provide adequate
> notice to the individual of the alleged infraction3. Provide an opportunity to respond to the
> allegation4. Provide for adjudication of suspension or termination decisions by individual(s) who
> are separate from system operators5. Provide opportunity to appeal an adverse decision*

34.   Additionally, Defendants chose to ignore the facts surrounding Plaintiff's

academic research involving pornography.  They also chose to ignore the fact that student

organizations openly distribute pornography on campus. The other professors' personal

use of state resources far exceeded Plaintiff's and admitted that other professor's had

accessed pornography when commonly investigated.  Indeed there is evidence of female

professors utilizing porn for academic reasons (or otherwise). However no one else has

been the subject of false reports, innuendo and rumors of child pornography.

35.   The minutes, documents and testimony of the tribunal, including information

intended for executive session involving unfounded allegations of child pornography

were released to third parties, news organizations and others allowing for its free

dissemination throughout the Campus, City, County and United States at large. The information disseminated throughout the City, County, State and Country has been false and primarily related to this false allegation of child pornography, which of course implies that Plaintiff is a pedophile.  Plaintiff has been scorned and shunned by neighbors, friends, family and potential employers.  The fact that these allegations are 100% false, adds to the gravity and evil nature of this entire affair.

36.     The Hearing Tribunal <u>unanimously</u> <u>determined</u> <u>that</u> <u>Plaintiff</u> <u>should</u> <u>not</u> <u>be</u> <u>fired.</u> They determined that just cause did not exist to terminate Plaintiff's employment. Further the Tribunal noted that Plaintiff had not violated UTSA's policies but that Plaintiff had used poor judgment.  The Tribunal also rendered a decision that the policies were vague and needed to be clarified.

37.      Unsatisfied with that outcome, the President and Provost appealed to the U.T. Board of Regents who chose to ignore the uncontroverted evidence that other professors have accessed pornography on campus. The BOR claimed to agree with the Hearing Tribunal's conclusions.  However, the BOR decided to reverse the Hearing Tribunal's decision so the statement by the BOR that it is was in agreement with the Hearing Tribunal which is misleading, false and is a *non-sequitur*.  Based solely on the transcript of the Hearing Tribunal, the BOR recommended that Plaintiff be terminated because he viewed pornographic materials and lied when questioned about viewing pornography.

38.     The BOR reversed the decision of the Hearing Tribunal.   The BOR relied exclusively on the transcript and documents reviewed by the Hearing Tribunal.  The BOR either misread or misstated the conclusion of the Hearing Tribunal.  In this regard, the BOR decision, *in toto* is as follows:

MOTION FROM EXECUTIVE SESSION
July, 24 2008

Based upon the record from the hearing of changes regarding the matter of Dr. Ronald Ayers, a tenured faculty member at The University of Texas at San Antonio, I move that:

the Board accept the factual finding of the faculty hearing tribunal that Dr. Ayers had "used a UTSA computer to access some sexually explicit web sites over an undetermined period of time," and the Board conclude that the record demonstrates that this use was not related to Dr. Ayers' University duties and was more than incidental; and

the Board accept the factual finding of the faculty hearing tribunal that, when confronted with the information about the charges against him, Dr. Ayers "offered varying explanations over time" and that the record shows that Dr. Ayers admitted to deleting records related to the allegations against him, and the Board conclude that Dr. Ayers was dishonest and demonstrated a lack of integrity in responding to the charges.

Based upon the above findings, I move that the Board determine that good cause exists for the termination of Dr. Ayers and vote to terminate him from the UTSA faculty effective 5:00 p.m. Central Standard Time on July 24, 2008.

39.    Clearly the Board of Regents ("BOR") intentionally misstated the Hearing Panel's conclusions, or it simply chose to ignore the uncontroverted evidence from the hearing. This complete abrogation of the truth rings of a pre-set cabal.   A determination that Plaintiff's termination would be effectuated was agreed upon between the Defendants prior to the pretextual determination that was issued.

40.    The essence of the BOR determination that Plaintiff was dismissed for "lying" because he "was dishonest and demonstrated a lack of integrity in responding to the charges" is insufficient as a matter of law to rise to the level of just cause to terminate Plaintiff.  In this regard, the standard utilized by all major universities of note is set forth by the American Association Of University Professors ("AAUP") which states:

Adequate cause has been defined as:

a basis on which a faculty member, either with *academic tenure* or during a *term appointment*, may be dismissed.

13

The term refers especially to demonstrated incompetence or dishonesty in teaching or research, to substantial and manifest neglect of duty, and to personal conduct which substantially impairs the individual's fulfillment of his institutional responsibilities.

*Faculty Tenure: Commission on Academic Tenure* 256 (Keast, ed., 1973) ("Faculty Tenure").

41.     Furthermore, the Hearing Tribunal's uncontroverted facts already established that Plaintiff was not afforded a coherent statement of charges to respond to.  The process started with allegations of child pornography.  Just as any citizen, Plaintiff was concerned with his liberty.  He was not forthcoming immediately due to the nature of the criminal conduct with which he was being charged.  Defendants failed to read him his rights as well as failed to Mirandize him. The members of the Hearing Tribunal correctly concluded that this WAS NOT JUST cause to terminate Plaintiff. They did admonish him for using poor judgment with regard to his handling of the matter as well as his use of the computers for any personal or recreational reasons.   Additionally, since the alleged charges changed over time, Plaintiff was unsure what he was responding to.

**CAUSES OF ACTION**

**COUNT I**

**With the Exception of UTSA, Defendants violated
42 U.S.C. 1983 Substantive Due Process
"Liberty Interest" and "False Imprisonment", and Coercion and Invasion of
Privacy
Violation of 1st, 4th and 5th Amendments as applied through the 14th Amendment
To the United States Constitution**

42.      Plaintiff incorporates the preceding facts as if fully set forth herein.

43.      At all times herein, Defendants acted "Under Color of Law."

44.     Plaintiff was terminated for reasons which were false, stigmatizing, and published, such that his standing in the community is seriously damaged or stigmatized to the extent he cannot seek or obtain other employment. Plaintiff's termination for viewing pornography, the dissemination of information to the public that he is a child pornographer and all of the facts stated herein is worse than merely adverse; it has given rise to a badge of infamy, public scorn, or the like.   Defendants intentionally made concrete, false assertions of wrongdoing on the part of the employee and made them public other than through legitimate public activity. Although repeated requests were made to clear his name of the child pornography cloak of infamy, Plaintiff was not allowed to conduct a meaningful hearing to clear his name regarding the allegations of child pornography.

45.     Further, Plaintiff was forced to seek medical treatment against his will.  Plaintiff was forced to attend a meeting from which he could not be excused which was presiding over by an armed Peace Officer.  Plaintiff was never Mirandized or informed that he had the right to Counsel or that he could refuse to answer any questions.  Plaintiff was held against his will and was placed under *de facto* arrest and threatened into agreeing to sign a document stating that he was mentally ill and need to seek the care and treatment of a psychiatrist.  Plaintiff was given a false choice of termination or medical treatment. This Conduct invaded Plaintiff's right to Privacy.

46.     Defendant's actions have caused and continue to cause Plaintiff damage in excess of the minimum jurisdictional limits of this Court.

## COUNT II

### With the Exception of UTSA, Defendants Violated
### 42 U.S.C. 1983 Due Process
### "Equal Protection/Gender Discrimination"
### Violation of 1st and 5th Amendments as applied through the 14th Amendment
### To the United States Constitution

47.    Plaintiff incorporates the preceding facts as if fully set forth herein.

48.    At all times herein, Defendants acted "Under Color of Law."

49.    Defendants applied facially neutral policies in a manner that results in Gender Discrimination.

50.    In this regard, Defendants applied the policies and procedures at UTSA differently towards Plaintiff based upon his gender, male. Indeed, Defendants do not prosecute nor recommend for termination female professors who: (1) view pornography; (2) excessively use UTSA computers for personal use; (3) accuse and attempt to prosecute those female professors who view porn as pedophiles; (4) require that female professors be treated by a psychotherapist for "porn addiction" for having viewed pornography; (5) accuse female professors of being "dangerous" for having viewed pornography; (6) disallowed female professors the viewing of pornography for academic purposes; and, (7) publically disseminated personal facts about female professors in an effort to place a badge of infamy upon their good name and reputation.

51.    Defendants cannot show that the unequal application of policies toward female and male professors and its direct discrimination of male professors is tailored to further a governmental interest.

52.    Defendant's actions have caused and continue to cause Plaintiff damage in excess of the minimum jurisdictional limits of this Court.

## COUNT III

### 42 U.S.C. 1983
### "Procedural Due Process"
### Violation of 1st and 5th Amendments as applied through the 14th Amendment
### To the United States Constitution

53.    Plaintiff incorporates the preceding facts as if fully set forth herein.

54.    At all times herein, Defendants acted "Under Color of Law."

55.    With the exception of UTSA, Defendants failed to follow procedure in their zest to prosecute Plaintiff. In this regard, Defendants acted inappropriately and illegally by making capricious recommendations regarding Plaintiff's employment, alleged criminal conduct, and medical condition, failing to follow established procedures, failing to protect Plaintiff's good name by protecting the dissemination of documents relating to his privacy and good name, treating Plaintiff's termination procedure differently than all others, improperly applying Federal Law to Plaintiff by forcing him to be placed on Medical leave and forcing him to seek psychotherapy, branding Plaintiff a threat to the university, breaching Plaintiff's contract, intentionally inflicting severe emotional distress upon Plaintiff, failing to properly train, supervise and train its supervisors to comply with State and Federal Law, failing to follow the recommendations of the unanimous vote of an uncontroverted record, refusing to allow Plaintiff the academic freedom to engage in the act of exploring, researching and publishing  research related to pornography and punishing Plaintiff for engaging in research related to a subject matter protected by the 1st Amendment.

56.    With the exception of UTSA, Defendants' actions have caused and continue to cause Plaintiff damage in excess of the minimum jurisdictional limits of this Court.

## COUNT IV

### Negligent Hiring, Supervision, Training And
### Retention By Defendants

57.    Plaintiff incorporates the preceding facts as if fully set forth herein.

58.    Plaintiff alleges that the conduct of the constituted negligent hiring, supervision,

training and retention.  In this regard, Plaintiff alleges that Defendants did not properly

screen, evaluate, investigate, or take any reasonable steps to determine whether the

person chosen as Dean of the College of Business was unfit, incompetent or a danger to

third parties.  Defendants knew or should have known that the person chosen as the Dean

was unfit and could foresee that the Dean would come in contact with Plaintiff, creating a

risk of danger to Plaintiff.  Defendant's failure to exercise reasonable care in the hiring,

supervision, training and retention of the Dean was the proximate cause of damages to

Plaintiff for which Plaintiff hereby sues.

59.    Defendant's actions have caused and continue to cause Plaintiff damage in excess

of the minimum jurisdictional limits of this Court.

## COUNT V

### Breach Of Contract

60.    Plaintiff incorporates the preceding facts as if fully set forth herein.

61.     Pursuant to Texas State Law, Plaintiff pleads a cause of action against Defendant

for breach of contract.

62.     Plaintiff entered into a valid written contract with Defendant, UTSA, as an

Associate Professor of Economics at the UTSA School of Business.

63.    Plaintiff gave Defendants valuable consideration and fully performed all duties

required of Plaintiff under the contract and performed all conditions precedent under the

contract.  Defendant breached said contract by refusing to follow the explicit and implied terms of said contract.

64.     As a direct and proximate consequence of said breach, Plaintiff suffered damages in an amount in excess of the minimum jurisdictional limits of this court.

65.     As noted previously, Plaintiff entered into agreement with Defendant and Plaintiff alleges that Defendant breached said contract by refusing to follow the implied and express terms of said contract. While Plaintiff has been reasonable, Defendant has done nothing to correct this deficiency.

66.     Because of the above-described breach of contract, Plaintiff had to retain attorneys to prosecute this action and agreed to pay the retained attorneys a reasonable fee.  Pursuant to Texas Civil Practice & Remedies Code §§ 38.000-38.006, Plaintiff gave Defendant proper notice of this claim for attorneys' fees.

## COUNT VI

## Fraudulent Misrepresentation

67.      Plaintiff incorporates the preceding facts as if fully set forth herein.

68.     Defendants made material representations to Plaintiff which were false. Specifically that they would abide by the policies and procedures of the university. Further, Plaintiff was informed that if he went on medical leave and sought treatment, he would not be terminated.

69.   When Defendants made the representation, Defendants knew the representation was false, or Defendants made the representation recklessly, as a positive assertion, and without knowledge of its truth.

70.   Defendants made the representation with the intent that Plaintiff act on such representation.

71.   Plaintiff ultimately relied upon aforementioned representations made by Defendants.

72.   Defendants' false representation directly and proximately caused injury to Plaintiff.

73.   Because of Defendant's fraudulent misrepresentation, Plaintiff suffered damages for which he herein sues.

### COUNT VII

### Violation of the Family Medical Leave Act, 29 U.S.C. 28

74.   Plaintiff incorporates the preceding facts as if fully set forth herein.

75.   Plaintiff was placed on leave pursuant to the Family Medical Leave Act of 1993.

76.   Plaintiff was given a full release to return to work by his Physician approximately eight (8) weeks after his leave began.

77.   Defendants embarked on a retaliatory mission to harass and ultimately discharge Plaintiff for having been placed on medical leave based upon the underlying medical reasons surrounding the leave. Plaintiff was terminated for having been place on leave.

78.   Defendant's actions were willful, malicious and intentional. Defendant's actions were taken with an absolute disregard of Plaintiff's FMLA rights.

79.     Defendant's actions have caused and continue to cause Plaintiff damage in excess of the minimum jurisdictional limits of this Court

## COUNT VIII

### Intentional Infliction Of Emotional Distress

80.     Plaintiff incorporates the preceding facts as if fully set forth herein.

81.     Defendants intentionally or recklessly pursued a course of conduct defaming and placing a badge of infamy over Plaintiff's good name and ruined his reputation forever. His standing in the community has diminished and his mental health has deteriorated due to Defendants vindictive vendetta style termination tactics.   Defendant's conduct was extreme and outrageous and proximately caused Plaintiff severe emotional distress. Plaintiff suffered damages for which Plaintiff herein sues.

## COUNT IX

### Tortious interference with Contract

82.     Plaintiff incorporates the preceding facts as if fully set forth herein.

83.     Plaintiff had a contract of employment and was a tenured professor.

84.      As stated herein, Defendants interfered with the performance of that contract and academic freedom afforded tenured professors.

85.     Defendants' conduct that was willful and intentional.

86.     The act was the proximate cause of the Plaintiff's damage.

87.     Plaintiff suffered damages for which Plaintiff herein sues

## DAMAGES

88.     Plaintiff incorporates the preceding facts as if fully set forth herein.  As a direct and proximate result of Defendant's conduct, Plaintiff suffered the following injuries and damages:

       (i.)     Back-pay, plus interest;

       (ii.)     Reinstatement or front pay;

       (iii.)     Compensation for all special damages;

       (iv.)     Damage to reputation in the past and future;

       (v.)     Mental anguish in the past and future;

       (vi.)     Damage to pension or retirement benefits and all other fringe benefits;

       (vii.)     A declaration that the acts and practices complained of in this Complaint are in violation of the United States Constitution via 42 U.S.C. Section 1983;

       (vii.)     An order specifically prohibiting retaliatory actions against Plaintiff and witnesses to this action; and

       (ix.)     Awarding Plaintiff such other relief, legal or equitable, as may be warranted.

As it was necessary for Plaintiff to hire the undersigned attorney to file this lawsuit, upon judgment, Plaintiff is entitled to an award of attorney fees and costs under 42 U.S.C. §, 1983, 1988(b) and Texas Civil Practice & Remedies Code §§ 38.000-38.006.

## EXEMPLARY DAMAGES

89.     Plaintiff would further show that the acts and omissions of Defendants complained of herein were committed knowingly, willfully, intentionally, with actual awareness, and with the specific and predetermined intention of  publically humiliating Plaintiff, as well enriching said Defendants at the expense of Plaintiff.  Plaintiff seeks to recover exemplary damages in order to punish said Defendants for such unconscionable overreaching and to deter such actions and/or omissions in the future and to make a public example of Defendants to signal to the citizens of Bexar County, the State of Texas and the United States of America that such reprehensible conduct will not be tolerated in a civilized society.

## PRAYER

FOR THESE REASONS, Plaintiff request that upon trial of this cause, that Plaintiff have judgment entered for:

      (i.)    Back-pay, plus interest;

      (ii.)    Reinstatement or front pay;

      (iii.)    Compensation for all special damages;

      (iv.)    Damage to reputation in the past and future;

      (v.)    Mental anguish in the past and future;

      (vi.)    Damage to pension or retirement benefits and all other fringe benefits;

      (vii)    A declaration that the acts and practices complained of in this Complaint are in violation of the United States Constitution via 42 U.S.C. Section 1983;

(viii)   An order specifically prohibiting retaliatory actions against Plaintiff and witnesses to this action;

(ix.)    Awarding Plaintiff such other relief, legal or equitable, as may be warranted;

(x.)     As it was necessary for Plaintiff to hire the undersigned attorney to file this lawsuit, upon judgment, Plaintiff is entitled to an award of attorney fees and costs under 42 U.S.C. §, 1983, 1988(b) and Texas Civil Practice & Remedies Code §§ 38.000-38.006;

(xi.)    Exemplary damages; and

(xii.)   As authorized by law, and Plaintiff further requests any general or special relief, at law or in equity, to which he is justly entitled.

Respectfully submitted,


/s/ Glenn D. Levy
Glenn D. Levy
Texas State Bar No.12264925
906 Basse, Suite 100
San Antonio, Texas 78212
Telephone: (210) 822-5666
Facsimile: (210) 822-5650
Attorney for Plaintiff Ronald M. Ayers

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify on the _____ day of _____, 2012, this document was properly served on all counsel of record via electronic filing in accordance with the United States District Court, Western District of Texas Procedures for Electronic Filing.


                                         /s/ Glenn D. Levy