IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RONALD M. AYERS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CASE NO. SA-10-CA-612-H |
| | § | |
| JAMES D. DANNEBAUM, et al., | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**TO THE HONORABLE HARRY LEE HUDSPETH:**

RONALD M. AYERS files this his Response to Defendants' Motion for Summary Judgment, and in support hereof would respectfully show this Court the following:

**INTRODUCTORY STATEMENT**

1. It must be made clear that this is not a summary judgment case. Rather, this is a clear-cut case of Defendants' violation of Plaintiff's privacy. Defendants' intentional act of falsely asserting wrongdoing on Plaintiff, fallaciously giving Plaintiff a choice of termination or medical treatment, and unjustly applying the policies and procedures at UTSA differently towards Plaintiff based upon his gender are strictly prohibited by the Federal Law. Defendants' hasty decision to terminate Plaintiff, a tenured professor of Economics with 29 years of service at UTSA, for reasons that arose from untruthfulness about being a "child pornographer." When Defendants' explanations for their actions are examined against evidence, timing, and manner in which Plaintiff was fired, such explanations are clearly pre-textual.

2. The evidence is clear: UTSA went after Ron Ayers hoping to find "child pornography." They found none. Dr. Ayers has been branded a criminal and child pornographer. UTSA's President now says Dr. Ayers should be able to clear his name of this child pornography stigma. A trial in front of the Court could accomplish such redemption.

**FACTS**

3. Plaintiff was a tenured Associate Professor of Economics at the University of Texas at San Antonio ("UTSA"). After over 27 years of unblemished service as a professor at UTSA, Plaintiff was terminated. (*See* Exhibit "B," Affidavit of Ronald M. Ayers ¶1; Exhibit "D," Deposition of Ricardo Romo, Page 25.) In a nutshell, the reasons seized upon by the Dean and Provost to terminate Plaintiff were alleged untruthfulness about viewing "Pornography." (*See Id.*) What they did was brand him a "child pornographer;" a criminal. (*See* Exhibit "C," Affidavit of David Gabler, ¶3.) Because of this, President Ricardo Romo has stated that neither he nor the UTSA objects to allowing Ayers to have a hearing to clear his name for being branded a "child pornographer" or a criminal. (*See* Exhibit "D," Deposition of Ricardo Romo, Page 33.)

4. It is not against the rules or procedures at UTSA to view pornography. (*See* Exhibit "B," Affidavit of Ronald M. Ayers, ¶2)

5. The charges of pornography began after a student allegedly complained of noises coming from Plaintiff's office on campus at UTSA. It is important to note that for nearly 29 years, Plaintiff had never received a complaint, much less a complaint of this nature. (*See* Exhibit "B," Affidavit of Ronald M. Ayers ¶3, Exhibit "D," Deposition of Ricardo Romo, Page 25.) Immediately, a criminal investigation about "Child Pornography" investigation took place by the University Police. (*See Id.*) This private, unproven, and untrue allegation was disseminated throughout the campus. (*Id.*) Indeed,

numerous searches and seizures took place investigating Plaintiff for suspicion of "Child Pornography," even though there was NO complaint regarding child pornography. (*Id.*)

6. There was no evidence that "child pornography" had ever been viewed or possessed by Plaintiff, nor was there a reason to suspect that he had. (*See* Exhibit "B," Affidavit of Ronald M. Ayers ¶3.) Despite this fact, rumors circulated about Plaintiff in an effort to defame, slander, and destroy his name and reputation. (*Id.*) The IT department and police department did discover that there was evidence that Plaintiff had visited some pornographic websites; however, no child pornography was involved. (*See Id.*)

7. This is clearly elucidated by David Gabler:

> 1. *"I recently left the University of Texas at San Antonio ("UTSA"), where I was the Chief Communications Officer.*
>
> 2. *I was employed by UTSA for 17 years.*
>
> 3. *When I was the University's spokesperson, I recall the events surrounding Ronald Ayers and the seizing of his computer. I had several conversations with President Romo about Dr. Ayers. During these meetings, there was concern by Romo that child pornography was the tip of the iceberg and that he was concerned that Ayers may have other unknown issues. Early in the investigations, it was a widespread belief and topic of conversation that child pornography would be found on Dr. Ayers computers. It was my understanding that there was no child pornography found or that it existed in Dr. Ayers office or on computers. I believe that because "normal" pornography was discovered in Ron Ayers possession, the leadership at UTSA believed they would uncover child pornography; however, this was a false assumption.*
>
> 4. *President Romo discussed the fact that there were three professors that he could consider appealing the Board of Regents about termination, and he decided on Ron Ayers as his target. The Board of Regents did not undertake the*

> *termination of Dr. Ayers on its own. This termination was effected by leadership at UTSA."*
>
> *See* Exhibit "C," Affidavit of David Gabler ¶1-4)

8. The President of UTSA found that the calling of the police and treating this as a criminal matter was not appropriate. (*See* Exhibit "D," Deposition of Ricardo Romo, Page 28-30; 40.)

9. Further, even though it is inappropriate, President Romo did nothing to conduct his own investigation. (*See* Exhibit "D," Deposition of Ricardo Romo, Page 30-31.)

10. After the police returned reports that there was no child pornography involved, the Dean held a meeting to discuss these findings with the Plaintiff. (*See* Exhibit "B," Affidavit of Ronald M. Ayers ¶4.) This meeting was akin to a "Star Chamber" wherein a decision had been predetermined and Plaintiff was not afforded an opportunity to defend himself. (*See Id.*)

11. When Plaintiff offered proffered reasons for viewing pornographic websites, including academic research, the Dean would neither accept nor listen to Plaintiff's academic assertions. (*See* Exhibit "B," Affidavit of Ronald M. Ayers.) The Dean had already predetermined her course of action prior to the meeting. (*See Id.*) In this regard, the Dean unilaterally ordered Plaintiff to seek medical help because she determined he was mentally sick. (*Id.*) The Dean stated that Plaintiff was "dangerous" and a "porn addict" and insinuated that he would and had molested underage minors. (*Id.*) The Dean stated that if Plaintiff refused treatment, he would be fired immediately. (*Id.*) Upon the conclusion of the meeting, Plaintiff was greeted by an armed police officer (who had been standing at the office door) and human resource person (who had been instructed prior to the meeting that Plaintiff would be placed on medical leave) who promptly placed Plaintiff on medical leave in compliance with the Dean's directive in compliance with the Family Medical Leave Act. (*Id.*)

12.     Plaintiff responded to the vicious, untrue criminal accusations by immediately retaining a criminal defense attorney.  (*See* Exhibit "B," Affidavit of Ronald M. Ayers, ¶5.)  The only logical explanation Plaintiff cold think of to explain the facts was that someone in the UTSA administration had "planted" child pornography on his office computer.  (*See Id.*)

13.     The facts of this meeting were intentionally, viciously, and illegally spread throughout the community.  (*See* Exhibit "B," Affidavit of Ronald M. Ayers, ¶6.)

14.     Not only was such tortious misconduct slanderous per se, it violated Plaintiff's privacy; it also was entirely unprecedented in the history of UTSA.  (*See* Exhibit "B," Affidavit of Ronald M. Ayers, ¶7.)

15.     Plaintiff complied and was treated by a Physician and underwent psychotherapy.  (*See* Exhibit "B," Affidavit of Ronald M. Ayers, ¶8.)  When the physician cleared Plaintiff of any mental illness or psychological problems, he presented this information to the Human Resources Department as instructed and asked to return to work.  (*See Id.*) Plaintiff was not allowed to return to work and was subsequently fired in violation of Federal Law.  (*Id.*) It is important to note that the reasons set forth in writing by the Provost recommending Plaintiff's termination included viewing pornography, excessive use of university resources for personal reasons, lying about viewing pornography, and other reasons which they later "dropped" as official reasons.  (*Id.*) In other words, their tactic was to throw enough reasons around about Plaintiff, even if untrue, in the hopes something would stick.  (*Id.*)

16.     Plaintiff appealed the recommendation for termination.  (*See* Exhibit "B," Affidavit of Ronald M. Ayers, ¶9.)  A Hearing Tribunal was held and the panel of tenured professors <u>unanimously determined that Plaintiff should not be fired.</u>  (*See Id.*)  At the two day hearing, the

Tribunal heard uncontroverted evidence that was presented by the Provost and Dean that other professors did access pornography and utilized state resources for personal use more often and for longer periods of time than Plaintiff. (*Id.*) The Tribunal also chose to ignore the fact that student organizations openly distributed pornography on campus. (*Id.*) The witnesses testified that other professors' personal use of state resources far exceeded Plaintiff's and admitted that other professors had accessed pornography when commonly investigated. (*Id.*) Indeed, there is evidence of female professors utilizing porn for academic reasons (or otherwise). (*Id.*) However, <u>no one else has</u> been the subject of false reports, innuendo, and <u>rumors of child pornography</u>. (*Id.*) The minutes, documents, and testimony of the Tribunal, including information intended for executive session involving unfounded allegations of child pornography were released to third parties, news organizations, and others allowing for its free dissemination throughout the Campus, City, County, and United States at large. (*Id.*)

17. Anonymous comments were posted on various websites that made this accusation. (*See* Exhibit "B," Affidavit of Ronald M. Ayers, ¶10.) Other comments referred to Plaintiff as a "rapist." (*See Id.*) Some of these comments were made by persons claiming to be UTSA employees, (*Id.*) One comment left on Plaintiff's website stated that he should "just go to jail." (*Id.*) Additionally, there have been anonymous death threats and several unpleasant, potentially dangerous encounters with anonymous persons. (*Id.*)

18. Plaintiff did not misuse his office computer or violate any university policy that he is aware of. (*See* Exhibit "B," Affidavit of Ronald M. Ayers, ¶11.)

19.     Female professors have been treated differently. (*See* Exhibit "B," Affidavit of Ronald M. Ayers, ¶12.) While at UTSA, Plaintiff became aware of several specific cases of serious wrongdoing, or at least accusations of wrongdoing, that were never investigated or punished. (*See Id.*)

20.     Unsatisfied with the outcome, the President and Provost appealed to the U.T. (*See* Exhibit "B," Affidavit of Ronald M. Ayers, ¶13.) Board of Regents (BOR) who chose to ignore the uncontroverted evidence that other professors have accessed pornography on campus. (*See Id.*) The BOR claimed to agree with the Hearing Tribunal's conclusions. (*Id.*) However, the BOR decided to reverse the Hearing Tribunal's decision so that the statement by the BOR that it is was in agreement with the Hearing Tribunal, which is misleading, false, and is a *non-sequitur*. (*Id.*) Based solely on the transcript of the Hearing Tribunal, the BOR recommended that Plaintiff be terminated because he allegedly viewed pornographic materials and then, at least according to the findings of the faculty tribunal, lied when questioned about viewing pornography. (*Id.*)

21.     Ever since these events occurred, Plaintiff has been scrutinized as a "child pornographer" through Bexar County. (*See* Exhibit "B," Affidavit of Ronald M. Ayers, ¶14.)

22.     Other professors have not been punished, as Plaintiff was, for using their computers in a manner which is in direct violation of UTSA's policies. (*See* Exhibit "B," Affidavit of Ronald M. Ayers, ¶15.)

## ARGUMENTS AND AUTHORITIES

***23.     Plaintiff's Gender Discrimination § 1983 Claim Is Not Preempted by Title VII, and also does Not Fail due to Lack of Evidence of Pretext or Any Similarly Situated Individual***

      a.    Addressing Defendants' assertions that Plaintiff's gender discrimination claims under § 1983 is preempted by Title VII, such a defense does not apply to Plaintiff's claims for gender discrimination that is in violation of the Equal Protection Clause of the Constitution. *See Saulpaugh v. Monroe Cmty. Hosp.,* 4 F.3d 134 (2d Cir. 1993).

      b.    Specifically, Defendants applied the policies and procedures at UTSA different towards Plaintiff based upon his gender, male. Indeed, Defendants do not prosecute nor recommend for termination female professors who: (1) view pornography; (2) excessively use UTSA computers for personal use; (3) accuse and attempt to prosecute those female professors who view porn as pedophiles; (4) require that female professors be treated by a psychotherapist for "porn addiction" for having viewed pornography; (5) accuse female professors of being "dangerous" for having viewed pornography; (6) disallowed female professors the viewing of pornography for academic purposes; and, (7) publically disseminated personal facts about female professors in an effort to place a badge of infamy upon their good name and reputation.

      c.    Finally, Defendants are not able to show that the unequal application of policies toward female and male professors and its direct discrimination of male professors are tailored to further a governmental interest.

**24.**    *Plaintiff's Procedural Due Process Claims does Not Fail because He did Not Receive all the Due Process to Which He was Entitled*

      a.    As correctly noted by Defendants in their Motion for Summary Judgment, the Fifth Circuit, on appeal, affirmed this Court's approach in setting forth the minimum due process requirements for terminating a tenured professor. It is noted that the professor has a right to " a meaningful opportunity to be heard in his own defense." However, Defendants have in fact

improperly applied the Federal Law when Defendants forced Plaintiff to be placed on Medical leave, forced Plaintiff to seek psychotherapy, branded Plaintiff a threat to the university, breached Plaintiff's contract, intentionally inflicted severe emotional distress upon Plaintiff, failed to properly train, supervise, and train its supervisors to comply with State and Federal Law, failed to follow the recommendations of the unanimous vote of an uncontroverted record, refused to allow Plaintiff the academic freedom to engage in the act of exploring, researching, and publishing research related to pornography, and punished Plaintiff for engaging in research related to a subject matter protected by the First Amendment of the U.S. Constitution.

25. ***Plaintiff's Substantive Due Process Claims Does Not Fail because Plaintiff Shows the Reasons for His Termination Were "False, Publicized, and Stigmatizing," and in Any Event, Plaintiff was Not Provided a Name-Clearing Hearing***

    a.    As set forth above, Plaintiff's substantive due process claims does not fail because Plaintiff did show that the reasons for his termination were false, publicized, and stigmatizing. At all times herein, Defendants acted "Under Color of Law." Plaintiff's termination for viewing pornography and the dissemination of information to the public that he is a child pornographer is not only false but also stigmatizing. It has given rise to a badge of infamy, public scorn, or the like. Defendants intentionally made concrete, false assertions of wrongdoing on the part of the employee and made them public other than through legitimate public activity.

    b.    Despite the fact that repeated requests were made to clear Plaintiff's name of the child pornography cloak of infamy, Plaintiff was not allowed to conduct a meaningful hearing to clear his name regarding the allegations of child pornography.

  c. Furthermore, Plaintiff was held against his will and was placed under *de facto* arrest and threatened into agreeing to sign a document stating that he was mentally ill and need to seek the care and treatment of a psychiatrist. Plaintiff was even given a false choice of termination or medical treatment. Defendants' conduct has clearly invaded Plaintiff's right to privacy through false and stigmatizing reasons for his termination.

## PRAYER

  WHEREFORE, PREMISES CONSIDERED, Plaintiff asks that this Court deny Defendants' Motion for Summary Judgment, allow Plaintiff a trial on the merits of this case, and grant such other and further relief to which this Court finds him justly entitled.

                Respectfully submitted,

                _/s/Glenn D. Levy_
                Glenn D. Levy
                Texas State Bar No.12264925
                906 Basse, Suite 100
                San Antonio, Texas 78212
                Telephone: (210) 822-5666
                Facsimile: (210) 822-5650

                **ATTORNEY FOR PLAINTIFF,**
                **RONALD M. AYERS**

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing document as sent via Electronic Filing Notification System on this the 11th day of September, 2012, to:

    GREG ABBOTT
    Attorney General of Texas
    DANIEL T. HODGE
    First Assistant Attorney General
    BILL COBB
    Deputy Attorney General for Civil Litigation
    DAVID C. MATTAS
    Director of Defense Litigation
    DREW L. HARRIS
    Assistant Attorney General
    State Bar No. 24057887
    Office of the Attorney General
    P.O. Box 12548
    Austin, Texas  78711-2548
    512.463-2120
    512.320-0667 FAX
    Drew.harris@oag.state.tx.us
    ATTORNEY FOR DEFENDANT


    JASON BOULETTE
    2801 Via Fortuna Drive, Suite 530
    Austin, Texas 78746
    512.732.8900
    512.732.8905 FAX
    Jason@boulettegolden.com
    ATTORNEY FOR DEFENDANT


                                                           _/s/Glenn D. Levy_
                                                           Glenn D. Levy